UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

| Present: The Honorable | John E. McDermott, United States Magistrate Judge |
|---|---|

| S. Anthony | |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |

**Proceedings:** (IN CHAMBERS) ORDER TO SHOW CAUSE WHY <u>IN FORMA PAUPERIS</u> APPLICATION SHOULD NOT BE DENIED

**I.
Proceedings**

On April 9, 2014, Joshua B. Shapiro ("Plaintiff") lodged for filing a Civil Rights Complaint pursuant to 42 U.S.C. § 1983 ("Complaint"), along with an <u>in forma pauperis</u> application in order to proceed without payment of the full filing fee. (Docket No. 1.) Because Plaintiff has requested leave to proceed <u>in forma pauperis</u>, the Court has screened the Complaint for the purpose of determining whether the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2).

For the reasons set forth below, Plaintiff is ordered to show cause why his <u>in forma pauperis</u> application should not be denied.

**II.
Discussion**

**A. Summary of Plaintiff's Allegations.**

Plaintiff's Complaint alleges federal and state law claims against Oscar Guaroa Moquete ("Moquete"), Los Angeles Police Department ("LAPD") Officer Kamaron Sardar, and LAPD Sergeant Mark Campbell (collectively, "Defendants"). (See Complaint at 1-4). Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

claims arise from an alleged eviction from premises which Plaintiff claims to have been subleasing from Moquete (the "premises"). The gist of the Complaint is that Plaintiff (along with his friend Melike Dewey) paid Moquete $600 to live at the premises "with many other subtenants" and was issued keys to the premises on April 1, 2012. When Moquete was unable to collect Plaintiff's rent payment on or about May 4, 2012, Moquete called the police to expedite the eviction of Plaintiff. (Complaint at 4-5.)

  Around 10:30 a.m. on or about May 4, 2012, Defendant Sardar confronted Plaintiff at the premises and explained that he was responding to a call by Moquete, who complained that he did not want Plaintiff living "on his property." (Complaint at 5.) Plaintiff informed Defendant Sardar he had been living at the premises with Dewey for over a month, along with several other subtenants. Plaintiff told Sardar he provided Moquete a rental payment of $600 (along with Dewey) and that Plaintiff and Dewey had each been issued two sets of keys to access the premises. Plaintiff informed Sardar that Defendant Moquete was not the owner of the premises. (Complaint at 5.) Sardar confiscated Plaintiff's keys to the premises and verified that they unlocked the front gated door and entrance door to the premises. (Complaint at 5.) Sardar challenged Plaintiff's right to remain at the premises "because the Plaintiff did not have a lease/receipt to verify the Plaintiff actually lived at the property." (Complaint at 6.) Plaintiff told Sardar that Dewey and his mail could establish that he had been living at the premises. However, Sardar claimed the mail was "insufficient to [show] the Plaintiff lived at the property." (Complaint at 6.) Plaintiff requested to speak to Sardar's supervisor, whom Sardar agreed to contact and who arrived at the premises within about 25 minutes. (Complaint at 6.) While Plaintiff and Sardar were inside the premises waiting for Sardar's supervisor, namely, Defendant Campell, to arrive, Plaintiff showed Sardar his personal property, which included clothes, shoes, personal effects, blanket, linens, bed, pillows, suitcase, laptop computer, computer bag, food, receipts, and mail. (Complaint at 6.) Sardar inquired whether Plaintiff would consent to a search of his computer bag. Plaintiff did not consent to the search but advised Sardar that he could call the other subtenants (listed in a cell phone in Plaintiff's possession) or wait briefly for Dewey to return and speak with the other subtenants and/or Dewey to verify Plaintiff lived at the premises. (Complaint at 5-6.)

  According to Plaintiff, because Plaintiff refused to consent to the search of his computer bag, Sardar handcuffed Plaintiff and detained him in the backseat of his patrol vehicle. (Complaint at 7.) Moreover, Sardar performed a pat-down/full-body search of Plaintiff, seized Plaintiff's wallet, and searched Plaintiff's computer bag. (Complaint at 7.) Sardar continued to question Plaintiff when he was detained in the back of the patrol vehicle, checking Plaintiff for warrants and threatening Plaintiff that if he did not disclose his date of birth, social security number, and previous addresses, Sardar would take Plaintiff straight to jail. (Complaint at 7-8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

Sardar further questioned Plaintiff concerning his criminal history. (Complaint at 8.) Plaintiff again told Sardar there were many other subtenants living at the premises "that defendant Moquete allowed to live at the [premises] and these other subtenants could verify the Plaintiff lived there too[.]" (Complaint at 8; see id. at 5.) Plaintiff states that "[n]ever at any[]time was the Plaintiff intoxicated, inebriated, had any weapons, caused any abuse, harm, or a threat to either defendant or anyone else." (Complaint at 8.)

Defendant Sardar continued to investigate and question Moquete regarding the matter. In the course of the investigation, Sardar obtained a contract between Moquete and the owner of the premises establishing that Moquete was a tenant of the premises. (Complaint at 5, 8.)

Plaintiff alleges "defendant Moquete had agreed with [several other people who lived at the premises] that in exchange for work they would perform for defendant Moquete[,] he would provide them free room and board." (Complaint at 9.) One of these subtenants was Julia Cobian ("Cobian"), who had been living at the property as a subtenant without having to satisfy any rent because she was the girlfriend of Moquete's oldest son. (Complaint at 8-9.) Plaintiff alleges that Cobian also babysat Defendant Moquete's youngest son when he visited the premises, and explained that Moquete "had visitation rights to have his youngest son come over to the premises and live the[re] intermittently while under the care of defendant Moquete." (Complaint at 9.)

Sardar used the cell phone in Plaintiff's possession to call Cobian, who told Sardar that she was a subtenant at the premises and was able to verify that Plaintiff had been living at the premises for more than a month. (Complaint at 9.) Moreover, when Dewey returned to the premises on the day of the incident, she verified that Plaintiff had been living at the premises and informed Sardar and Campell that Moquete was attempting to expedite Plaintiff's eviction by non-judicial remedy. (Complaint at 10.) Plaintiff further alleges that Moquete conceded that Dewey and Cobian were his subtenants. (Complaint at 10.)

Additionally, Plaintiff states that Defendant Campell continued to investigate and

> observed the two keys which were previously in the Plaintiff's possession when defendant Sardar arrived at the premises that unlocked and locked the gated door and entrance door to the property; the Plaintiff's mail which confirmed that he was receiving mail at the [premises]; statements from . . . Dewey . . . that verified the Plaintiff had been living at the property for over a month and had jointly satisfied a $600 cash payment to defendant Moquete for rent; statements from Cobian that verified that the Plaintiff had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

> been living at the premises for over a month and was rented to by defendant Moquete; and statements from other subtenants who also lived [at] the [premises] at the same time as the Plaintiff who verified the Plaintiff had been living at the premises and was rented the premises by defendant Moquete.

(Complaint at 10.)

According to Plaintiff, the officer defendants stated at the conclusion of their investigation that "if the Plaintiff decides to take defendant Moquete to mediation to resolve this matter, defendants[] Campell and Sardar would agree to appear and support that Plaintiff was lawfully living at the property." (Complaint at 11.) However, Defendants Sardar and Campell further stated that they would not allow Plaintiff to continue to live/stay at the premises because "defendant Moquete would continue to call the police and waste police resources[.]" (Complaint at 11 (alleging also that "Defendant Campell continued discussing the budget problems the City of Los Angeles has and how it does not have the resources to deal with these types of problems.").)

Plaintiff was subsequently released from the patrol vehicle, and the handcuffs were taken off. (Complaint at 11.) Defendants Campell and Sardar detained Plaintiff "for about an hour to an hour and a half." (Complaint at 12.) Plaintiff was never read his Miranda rights nor did he sign any waiver of such rights. (Complaint at 7.)

Sardar and Campell instructed Plaintiff that he "would go straight to jail for trespassing if he stayed at the premises." (Complaint at 11.) The officer defendants "forced the Plaintiff to gather his personal property from inside the premises and to vacate the premises immediately." (Complaint at 11-12.)

Plaintiff alleges that Defendants violated Plaintiff's rights to procedural due process and equal protection under the Fourteenth Amendment (Complaint at 29-42), violated Plaintiff's rights to be free from unreasonable searches and seizures under the Fourth Amendment (Complaint at 13-29), conspired to violate Plaintiff's constitutional rights (Complaint at 42-46), and violated state law (Complaint at 46-70). Plaintiff seeks compensatory and punitive damages. (Complaint at 72.)

/ / /
/ / /
/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

**B.      Legal Standard.**

"A district court may deny leave to proceed in forma pauperis at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit." Minetti v. Port of Seattle, 152 F.3d 1113, 1115 (9th Cir. 1998) (per curiam) (citation and internal quotation marks omitted); see also 28 U.S.C. § 1915(e)(2)(B) (court shall dismiss in forma pauperis case at any time it determines the action: "(i) is frivolous or malicious; [¶] (ii) fails to state a claim on which relief may be granted; [¶] or (iii) seeks monetary relief against a defendant who is immune from such relief."). Dismissal is appropriate if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678, "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555.

In considering whether to dismiss a complaint, the Court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94; Albright v. Oliver, 510 U.S. 266, 267 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro se pleadings are "to be liberally construed" and are held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94; Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under *Iqbal*.") (italics in original). Dismissal for failure to state a claim can be warranted based on either the lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

/ / /
/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

**C.     Analysis.**

   **1.     Plaintiff's Procedural Due Process Claims Are Subject To Dismissal For Failure To State A Claim.**

      **i.     Wrongful Eviction.**

   Plaintiff claims that his procedural due process rights were violated when he was the victim of an extrajudicial eviction from the premises by Moquete and the officer defendants. (See Complaint at 4-12, 29-40.)

   The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend XIV.  Procedural due process claims are examined under a two-part analysis.  First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment.  Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process.  See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989).  "Property interests are not created by the Constitution[.]"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" Id. (internal quotation marks, ellipsis, and citation omitted).

   Here, although Plaintiff claims to have been a subtenant who paid Moquete $600 (jointly with Dewey) to live at the premises and was issued keys to the premises on April 1, 2012, Plaintiff cannot show the existence of a conventional relationship of landlord and tenant when there were "many other subtenants" that "Moquete allowed to live at the [premises,]" and the premises generally remained under the supervision and control of Moquete.  (Complaint at 5, 8, 9 (indicating that "Moquete had agreed with [several other people who lived at the premises] that in exchange for work they would perform for defendant Moquete[,] he would provide them free room and board[,]" and that Moquete's youngest son "visited the premises" and even "live[d] the[re] intermittently while under the care of defendant Moquete"); see id. at 2 (stating that "Moquete . . . was also a tenant at the premises").)  "The absence of specified premises assigned for the exclusive occupancy of a particular person or persons with the capacity and right to exclude others from entering would seem to preclude the existence of anything resembling a conventional landlord-tenant relation." Martinez v. Sonoma-Cutrer Vineyards, 577 F.Supp. 451, 454 (C.D. Cal. 1983) (rejecting plaintiffs' § 1983 claim that they were deprived of a property interest without due process of law when they were evicted from their premises

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

without the benefit of an unlawful detainer procedure because plaintiffs failed to establish the existence of a protected property interest in the case of "workers occupying bunks in a barracks remaining under the supervision and control of the employer through its foreman"). Taking Plaintiff's allegations in the Complaint as true, therefore, the Court finds that Plaintiff does not establish the existence of a protected property interest.

In sum, Plaintiff fails to state a cognizable procedural due process claim in relation to his allegations that he was wrongfully evicted from the premises without prior notice and a hearing. See Thomas v. Cohen, 453 F.3d 657, 658-60, 663 (6th Cir. 2006) (no due process violation when officers evicted plaintiffs from a transitional homeless shelter despite their protests that they were tenants who paid rent because plaintiffs did not qualify as tenants under state law and lacked a protected property interest under the Fourteenth Amendment).

### ii. Seizure of Plaintiff's Property.

Plaintiff alleges that Defendants violated Plaintiff's Fourteenth Amendment right to procedural due process when they unlawfully seized Plaintiff's personal property without providing notice or a hearing before the deprivation occurred. (Complaint at 40-42.) Specifically, Plaintiff alleges that Sardar confiscated Plaintiff's keys to the premises on May 4, 2012, and refused to return the keys to Plaintiff when he requested them back. (Complaint at 5, 40.) Moreover, Plaintiff further alleges that Sardar and Campell did not satisfy the requirements of California Civil Code § 2080, et seq., because they failed to provide him a receipt and/or instructions for retrieving his personal property. (Complaint at 41.) According to Plaintiff, "[n]o adequate post deprivation remedy was available for the Plaintiff to retrieve his personal property." (Complaint at 42.)

At the core of the due process clause is the right to notice and a hearing "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978) (internal citation omitted). However, Plaintiff's allegations are insufficient to state a procedural due process claim based on the confiscation of the keys to the premises, because he does not allege Defendants deprived him of any property interest, let alone a significant one. As discussed above, Plaintiff alleges that Moquete issued Plaintiff the keys to the premises "to permit the Plaintiff . . . access to and from the property." (Complaint at 5.) Yet, Moquete subsequently called the officer defendants and requested their help in removing Plaintiff from the premises because "[Moquete] did not want the Plaintiff living on his property." (Complaint at 5.) In light of the fact that Plaintiff has not alleged the existence of a protected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

property interest in remaining at the premises, see supra at § C.1.i., Plaintiff's allegations are also insufficient to establish the existence of a protected property interest in the keys that were provided "to permit [him] . . . access to and from the property." (Complaint at 5.) In sum, Plaintiff's procedural due process claim based on Defendants' confiscation of the keys to the premises fails. See Memphis Light, Gas & Water Div., 436 U.S. at 19.

\*   \*   \*   \*

Based on the foregoing, the Court concludes that the Complaint fails to allege a cognizable claim for violation of Plaintiff's Fourteenth Amendment due process rights. Plaintiff's Fourteenth Amendment due process claims are subject to dismissal.

> **2.  Plaintiff's Fourth Amendment Claims Are Subject To Dismissal For Failure To State A Claim.**

The Fourth Amendment accords the right to protection from arrest without probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Watson, 423 U.S. 411, 417 (1976). Thus, "[a] claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City and County of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). Although probable cause is "incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), it is widely understood that "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck, 379 U.S. 89, 91)); accord Edgerly v. City and County of San Francisco, 599 F.3d 946, 953 (9th Cir. 2010). To determine whether an arrest is supported by probable cause, the court must consider "the totality of the circumstances known to the arresting officers" at the time of the arrest. John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008). "'Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.'" McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Furthermore, "[p]olice may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause," and "[p]robable cause may be founded upon . . . information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." Hart v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006) (internal quotations and citation omitted). Once an officer has made a lawful arrest, the officer may conduct a search of the arrestee's person and area of control. United States v. Robinson, 414 U.S. 218, 224 (1973).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

Cal. Penal Code § 602(o) defines trespass in relevant part as

> Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession.

Cal. Penal Code § 602(o).

Plaintiff alleges that the officer defendants violated Plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures when they (1) handcuffed Plaintiff, (2) performed a pat-down/full-body search of Plaintiff, (3) searched Plaintiff's computer bag, (4) seized Plaintiff's wallet, (5) interrogated Plaintiff, and (6) detained Plaintiff in the backseat of a patrol vehicle for up to one hour and a half. (Complaint at 13-29.) Plaintiff argues that the officer defendants "placed him under arrest without a warrant, probable cause, and/or reasonable suspicion." (Complaint at 26.) According to Plaintiff, the officer defendants "did not have reasonable suspicion/probable cause to detain the Plaintiff because there was no criminal activity occurring at the premises[.]" (Complaint at 28.) Plaintiff's contentions are unpersuasive.

As discussed above, Plaintiff states that on or about May 4, 2012, at 10:30 a.m., Plaintiff was confronted by Defendant Sardar at the premises. Sardar allegedly informed Plaintiff that he was responding to a call for service made by Moquete, who complained "he did not want the Plaintiff living on his property." (Complaint at 5.) Plaintiff allegedly told Sardar that he had been living at the property for over a month "with many other subtenants." (Complaint at 5.) "Plaintiff informed defendant Sardar that . . . Moquete had rented to the Plaintiff to live at the premises and [that Plaintiff] had been arguing with defendant Moquete over rent money that defendant Moquete was demanding, but because [Plaintiff] refused to pay[, Moquete] . . . called the police." (Complaint at 5.) Plaintiff states that "Sardar continued to quibble with the Plaintiff concerning his right to remain living at the property because the Plaintiff did not have a lease/receipt[.]" (Complaint at 6 (stating further that "Sardar claimed the mail [Plaintiff had been receiving at the premises] was insufficient to [show] the Plaintiff lived at the [premises]").) Plaintiff requested to speak to Sardar's supervisor. (Complaint at 6.) While Plaintiff and Sardar were inside the premises waiting for Sardar's supervisor (Defendant Campell) to arrive, Plaintiff showed Sardar his personal property, which included clothes, shoes, personal effects, blanket, linens, bed, pillows, suitcase, laptop computer, computer bag, food, receipts, and mail.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

(Complaint at 6.) Sardar inquired whether Plaintiff would consent to a search of his computer bag. Plaintiff did not consent to the search. (Complaint at 5-6.) According to Plaintiff, because Plaintiff refused to consent to the search of his computer bag, Sardar handcuffed Plaintiff and detained him in the backseat of his patrol vehicle. (Complaint at 7.) Moreover, Sardar performed a pat-down/full-body search of Plaintiff, seized Plaintiff's wallet, and searched Plaintiff's computer bag. (Complaint at 7.) Sardar continued to question Plaintiff when he was detained in the back of the patrol vehicle, checking Plaintiff for warrants and threatening Plaintiff that if he did not disclose his date of birth, social security number, and previous addresses, Sardar would take Plaintiff straight to jail. (Complaint at 7-8.) Sardar further questioned Plaintiff concerning his criminal history. (Complaint at 8.)

The Court finds based on the foregoing allegations in the Complaint that, at the time Plaintiff was placed in handcuffs and confined to the back of the patrol vehicle, there was probable cause for the defendant officers to believe Plaintiff was acting in violation of Cal. Penal Code § 602(o). See United States v. Butler, 74 F.3d 916, 921 (9th Cir.), cert. denied, 519 U.S. 967 (1996) (a detailed statement from an adult victim witness may itself suffice to establish probable cause); see also John, 515 F.3d at 940-42. The officer defendants had the statements of at least one adult witness supporting probable cause to believe Plaintiff was trespassing. Moreover, the officers conducted an independent investigation establishing that these statements were "reasonably trustworthy." Taking Plaintiff's allegations as true, Defendants Sardar and Campell could have "conscientiously entertain[ed] an honest and strong suspicion that [Plaintiff] [was] guilty of a crime." Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003), cert. denied, 540 U.S. 1218 (2004). Pursuant to the allegations in the Complaint, "under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe" Plaintiff was trespassing. Dubner, 266 F.3d at 966.

Moreover, because the allegations in the Complaint do not establish that Plaintiff was unlawfully arrested, i.e., Plaintiff failed to allege the officer defendants lacked probable cause to arrest him for violation of Cal. Penal Code. § 602(o), Plaintiff has not alleged that the contemporaneous search of Plaintiff's person, wallet, and computer bag violated his Fourth Amendment right to be free from unreasonable searches. Robinson, 414 U.S. at 224 (an officer may conduct search of arrestee's person and area of control incident to a lawful arrest); United States v. Edwards, 415 U.S. 800, 802-03 (1974) (holding that the Fourth Amendment permits warrantless searches incident to custodial arrests); United States v. Passaro, 624 F.2d 938, 943-44 (9th Cir. 1980), cert. denied, 449 U.S. 1113 (1981) (search of arrestee's wallet incident to a valid arrest is reasonable as a matter of law under the Fourth Amendment); United States v. Ziller, 623 F.2d 562, 562 (9th Cir.), cert. denied, 449 U.S. 877 (1980) ("[A] search of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

contents of the wallet is likewise permissible as being an incident to and part of a personal search."); United States v. Gordon, 895 F.Supp.2d 1011, 1019-22 (D. Hawai'i 2012) (upholding search of bag as a valid warrantless search incident to arrest); United States v. Cook, 2011 WL 6748517, at *4-*6 (N.D. Cal. 2011) (upholding search of backpack as a valid warrantless search incident to arrest). Finally, the officer defendants' inquiries regarding Plaintiff's date of birth, social security number, previous addresses, and criminal history are neither a search nor a seizure under the Fourth Amendment. See United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993) (noting that mere questioning is neither a search nor a seizure under the Fourth Amendment, but that questioning may be related to whether a detention, or scope of detention, is lawful); see, e.g., Alston v. County of Sacramento, 2012 WL 2839825, at *12 (E.D. Cal. 2012) (questioning regarding plaintiff's finances and living situation do not amount to a search under the Fourth Amendment ).

Based on the foregoing, the Court concludes that the Complaint fails to allege a cognizable claim for violation of Plaintiff's Fourth Amendment rights. Plaintiff's Fourth Amendment claims are subject to dismissal.

### 3. **Plaintiff's Fourteenth Amendment Equal Protection Claim Is Subject To Dismissal For Failure To State A Claim.**

Plaintiff asserts a Fourteenth Amendment claim under the Equal Protection Clause. (Complaint at 37-40.) Specifically, Plaintiff alleges that the officer defendants "intentionally treated the Plaintiff differently than the other subtenants living at the premises at the time of the incident . . . without any rational basis." (Complaint at 38.) Plaintiff states that he was a "lawful subtenant that had been living at the premises for over a month and had produced sufficient proof to defendants[] Sardar and Campell that he had been lawfully living [there,]" and that the officer defendants' "actions were irrational[.]" (Complaint at 39-40 (alleging further that the officer defendants' "detainment/arrest o[f] the Plaintiff was based on the Plaintiff's refusal to consent to the search of his computer bag and not based on any criminal activity occurring at all[,]" and that they "cho[]se to evict the Plaintiff from the premises [at the instruction of Moquete]" despite conceding that they believed the Plaintiff was "lawful[ly] living at the premises").)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (internal quotation marks and citation omitted). Although an equal protection claim typically involves discrimination based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

membership in a class, an individual singled out for differential treatment in an irrational and arbitrary manner may sometimes bring a "class of one" equal protection claim. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curiam); see also Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008). The plaintiff must show that the defendant intentionally treated plaintiff differently from others similarly situated, and that there is no rational basis for the difference in treatment. Olech, 528 U.S. at 564. The degree of similarity between plaintiff and the persons with whom he compares himself must be extremely high. See Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir.), cert denied, --- U.S. ---, 131 S. Ct. 824 (2010) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (internal quotation marks and citation omitted); Purze v. Village of Winthtrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002) (plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects").

Here, Plaintiff does not allege that he was treated differently than others similarly situated to him. Plaintiff's conclusory allegation that he was similarly situated to all the other subtenants living at the premises at the time of the incident is unsupported by the factual allegations in the Complaint. Without specific allegations showing that the officer defendants treated Plaintiff differently from persons whose circumstances were similar to Plaintiff's in all relevant respects, there is no factual basis for his equal protection claim. See McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004) (homeowner failed to establish class-of-one equal protection claim when he failed to identify anyone similarly situated to him who was intentionally treated differently in connection with investigation of fire); Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) ("Plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons *situated similarly in all relevant aspects* were treated differently.") (internal quotation marks and citation omitted); Vinatieri v. Mosley, 787 F.Supp. 2d 1022, 1031 (N.D. Cal. 2011) (plaintiff challenging police failure to arrest neighbor who assaulted him failed to state an equal protection claim when he failed to explain "to *whom* he was similarly situated"), aff'd, 2013 WL 3389360 (9th Cir., Jul. 9, 2013).

Accordingly, Plaintiff's equal protection claim is subject to dismissal.[1]

---

[1] In addition to Plaintiff's failure to allege differential treatment, the Court notes that an individual may not pursue a class-of-one equal protection claim based on official acts that are inherently discretionary. See Engquist, 553 U.S. at 602-03 (when state action involves "discretionary decisionmaking based on a vast array of subjective, individualized assessments," there is no equal protection violation "when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted"); Towery v. Brewer, 672

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

**4. Plaintiff's § 1983 Conspiracy Claim Is Subject to Dismissal For Failure To State A Claim.**

Because Plaintiff fails to state an underlying constitutional claim, his allegations are insufficient to state a claim for conspiracy. (See Complaint at 42-46); Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989) (no liability for conspiracy under section 1983 "unless there is an actual deprivation of civil rights"); Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010) ("plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right"); Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006) (while conspiracies may be actionable under § 1983, there must have been an actual deprivation of a right secured by the Constitution and laws); Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000); Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998).

In sum, Plaintiff's conspiracy claim is subject to dismissal.

**5. Plaintiff's Claims Under California Law Are Subject To Dismissal.**

Because Plaintiff fails to state a viable federal constitutional claim against Defendants, the Court may decline to exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction" over state law claims where the court "has dismissed all claims over which it has original jurisdiction . . ."); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the

---

F.3d 650, 660-61 (9th Cir.), cert. denied, --- U.S. ---, 132 S. Ct. 1656 (2012) ("In other words, the existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are."); compare Flowers v. City of Minneapolis, 558 F.3d 794, 799 (8th Cir. 2009) (police officer's decisions regarding whom to investigate are subject to traditional class-based equal protection analysis but may not be attacked in a class-of-one equal protection claim); Donahue v. Arpaio, 869 F. Supp. 2d 1020, 1074 (D. Ariz. 2012) (discretionary decisions by sheriff and prosecutor during investigation and prosecution of criminal charges could not be basis for a class-of-one equal protection claim) with Elliott-Park v. Manglona, 592 F.3d 1003, 1006-07 (9th Cir. 2010) (allegations that Micronesian police officers failed to investigate and arrest a Micronesian drunk driver involved in accident with Korean victim due to race-based reasons stated an equal protection claim); but see Hanes v. Zurick, 578 F.3d 491 (7th Cir. 2009) (allowing class-of-one claim when plaintiff alleged that officer was motivated by personal animus when he repeatedly arrested only plaintiff during plaintiff's disputes with neighbors).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 14-0550-UA (JEM) | Date | June 11, 2014 |
|---|---|---|---|
| Title | Joshua B. Shapiro v. Oscar Guaroa Moquete, et al. | | |

federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

Thus, Plaintiff's claims under California law are subject to dismissal.

### III.
### Conclusion

Based the foregoing, Plaintiff is ordered to show cause on or before July 2, 2014, why his in forma pauperis application should not be denied for failure to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2). If Plaintiff still wishes to pursue this action, he shall have until July 2, 2014, to file a written response to this order to show cause.

Failure to comply with these requirements may result in a recommendation that the in forma pauperis application be denied for failure to state a claim on which relief may be granted. The failure to properly respond to this OSC may result in a recommendation that the in forma pauperis application be denied for failure to prosecute and/or failure to comply with a court order.

IT IS SO ORDERED.

cc: Parties

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | sa | |