UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA B. SHAPIRO,<br><br>        Plaintiff,<br><br>    v.<br><br>OSCAR GUAROA MOQUETE, <u>et al.</u>,<br><br>        Defendants. | Case No. SACV 14-0550-JAK (JEM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

**I.**

**INTRODUCTION**

Joshua B. Shapiro ("Plaintiff"), proceeding <u>pro se</u> and <u>in forma pauperis</u>, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

Initially, Plaintiff's application to proceed <u>in forma pauperis</u> ("IFP") was denied. Plaintiff appealed, and on November 27, 2015, the Ninth Circuit Court of Appeals issued an order reversing the denial of Plaintiff's IFP application and remanding for further proceedings. The Ninth Circuit found that the Complaint "was not frivolous or without merit because it alleged a cognizable Fourth Amendment claim." The mandate issued on December 22, 2015. Accordingly, on January 7, 2016, the Court issued an order granting Plaintiff's IFP application.

## II.

## SCREENING REQUIREMENTS

In accordance with the provisions of the Prison Litigation Reform Act of 1995, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has facial plausibility when the

complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Unless it is clear that the deficiencies in a complaint cannot be cured, pro se litigants are generally entitled to a notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. Id. at 623. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id.; Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**

## III.

## DISCUSSION

**A.     Summary of Plaintiff's Allegations.**

Plaintiff's Complaint alleges federal and state law claims against Oscar Guaroa Moquete ("Moquete"), Los Angeles Police Department ("LAPD") Officer Kamaron Sardar, and LAPD Sergeant Mark Campell (collectively, "Defendants"). (See Complaint at 1-4). Plaintiff's claims arise from an alleged eviction from premises which Plaintiff claims to have been subleasing from Moquete (the "premises"). The gist of the Complaint is that Plaintiff (along with his friend Melike Dewey) paid Moquete $600 to live at the premises and was issued keys to the premises on April 1, 2012. Moquete and "many other subtenants" also lived at the premises. When Moquete was unable to collect Plaintiff's rent payment on or

1  about May 4, 2012, Moquete called the police to expedite the eviction of Plaintiff.
2  (Complaint at 2, 4-5.)
3       According to Plaintiff, around 10:30 a.m. on or about May 4, 2012, Defendant Sardar
4  confronted Plaintiff at the premises and explained that he was responding to a call by
5  Moquete, who complained that he did not want Plaintiff living "on his property." (Complaint
6  at 5.) Plaintiff informed Defendant Sardar he had been living at the premises with Dewey
7  for over a month, along with several other subtenants. Plaintiff told Sardar he provided
8  Moquete a rental payment of $600 (along with Dewey) and that Plaintiff and Dewey had
9  each been issued keys to access the premises. Plaintiff informed Sardar that Defendant
10 Moquete was not the owner of the premises. (Complaint at 5.) Sardar confiscated
11 Plaintiff's keys to the premises and verified that they unlocked the front gated door and
12 entrance door to the premises. (Complaint at 5.) Sardar challenged Plaintiff's right to
13 remain at the premises "because the Plaintiff did not have a lease/receipt to verify the
14 Plaintiff actually lived at the property." (Complaint at 6.) Plaintiff told Sardar that Dewey
15 and his mail could establish that he had been living at the premises. However, Sardar
16 claimed the mail was "insufficient to [show] the Plaintiff lived at the property." (Complaint at
17 6.) Plaintiff requested to speak to Sardar's supervisor, whom Sardar agreed to contact and
18 who arrived at the premises within about 25 minutes. (Complaint at 6.) While Plaintiff and
19 Sardar were inside the premises waiting for Sardar's supervisor, namely, Defendant
20 Campell, to arrive, Plaintiff showed Sardar his personal property, which included clothes,
21 shoes, personal effects, blanket, linens, bed, pillows, suitcase, laptop computer, computer
22 bag, food, receipts, and mail. (Complaint at 6.) Sardar inquired whether Plaintiff would
23 consent to a search of his computer bag. Plaintiff did not consent to the search but advised
24 Sardar that he could call the other subtenants (listed in a cell phone in Plaintiff's
25 possession) or wait briefly for Dewey to return and speak with the other subtenants and/or
26 Dewey to verify Plaintiff lived at the premises. (Complaint at 5-6.)

1          According to Plaintiff, because Plaintiff refused to consent to the search of his
2  computer bag, Sardar handcuffed Plaintiff and detained him in the backseat of his patrol
3  vehicle. (Complaint at 7.) Moreover, Sardar performed a pat-down/full-body search of
4  Plaintiff, seized Plaintiff's wallet, and searched Plaintiff's computer bag. (Complaint at 7.)
5  Sardar continued to question Plaintiff when he was detained in the back of the patrol
6  vehicle, checking Plaintiff for warrants and threatening Plaintiff that if he did not disclose his
7  date of birth, social security number, and previous addresses, Sardar would take Plaintiff
8  straight to jail. (Complaint at 7-8.) Sardar further questioned Plaintiff concerning his
9  criminal history. (Complaint at 8.) Plaintiff again told Sardar there were many other
10 subtenants living at the premises "that defendant Moquete allowed to live at the [premises]
11 and these other subtenants could verify the Plaintiff lived there too[.]" (Complaint at 8; see
12 id. at 5.) Plaintiff states that "[n]ever at any[]time was the Plaintiff intoxicated, inebriated,
13 had any weapons, caused any abuse, harm, or a threat to either defendant or anyone else."
14 (Complaint at 8.)
15         Defendant Sardar continued to investigate and question Moquete regarding the
16 matter. In the course of the investigation, Sardar obtained a contract between Moquete and
17 the owner of the premises establishing that Moquete was a tenant of the premises.
18 (Complaint at 5, 8.)
19         Plaintiff alleges "defendant Moquete had agreed with [several other people who lived
20 at the premises] that in exchange for work they would perform for defendant Moquete[,] he
21 would provide them free room and board." (Complaint at 9.) One of these subtenants was
22 Julia Cobian ("Cobian"), who had been living at the property as a subtenant without having
23 to satisfy any rent because she was the girlfriend of Moquete's oldest son. (Complaint at 8-
24 9.) Plaintiff alleges that Cobian also babysat Defendant Moquete's youngest son when he
25 visited the premises, and explained that Moquete "had visitation rights to have his youngest
26 son come over to the premises and live the[re] intermittently while under the care of
27 defendant Moquete." (Complaint at 9.)
28

Sardar used the cell phone in Plaintiff's possession to call Cobian, who told Sardar that she was a subtenant at the premises and was able to verify that Plaintiff had been living at the premises for more than a month. (Complaint at 9.) Moreover, when Dewey returned to the premises on the day of the incident, she verified that Plaintiff had been living at the premises and informed Sardar and Campell that Moquete was attempting to expedite Plaintiff's eviction by non-judicial remedy. (Complaint at 10.) Plaintiff further alleges that Moquete conceded that Dewey and Cobian were his subtenants. (Complaint at 10.)

Additionally, Plaintiff states that Defendant Campell continued to investigate and
> observed the two keys which were previously in the Plaintiff's
> possession when defendant Sardar arrived at the premises that
> unlocked and locked the gated door and entrance door to the
> [premises]; the Plaintiff's mail which confirmed that he was receiving
> mail at the [premises]; statements from . . . Dewey . . . that verified the
> Plaintiff had been living at the property for over a month and had jointly
> satisfied a $600 cash payment to defendant Moquete for rent;
> statements from Cobian that verified that the Plaintiff had been living at
> the premises for over a month and was rented to by defendant
> Moquete; and statements from other subtenants who also lived [at] the
> [premises] at the same time as the Plaintiff who verified the Plaintiff
> had been living at the premises and was rented the premises by
> defendant Moquete.

(Complaint at 10.)

According to Plaintiff, the officer defendants stated at the conclusion of their investigation that "if the Plaintiff decides to take defendant Moquete to mediation to resolve this matter, defendants[] Campell and Sardar would agree to appear and support that Plaintiff was lawfully living at the property." (Complaint at 11.) However, Defendants Sardar and Campell further stated that they would not allow Plaintiff to continue to live/stay at the premises because "defendant Moquete would continue to call the police and waste

6

1 | police resources[.]" (Complaint at 11 (alleging also that "Defendant Campell continued
2 | discussing the budget problems the City of Los Angeles has and how it does not have the
3 | resources to deal with these types of problems.").)
4 |   Plaintiff was subsequently released from the patrol vehicle, and the handcuffs were
5 | taken off. (Complaint at 11.) Defendants Campell and Sardar detained Plaintiff "for about
6 | an hour to an hour and a half." (Complaint at 12.) Plaintiff was never read his Miranda
7 | rights nor did he sign any waiver of such rights. (Complaint at 7.)
8 |   Sardar and Campell instructed Plaintiff that he "would go straight to jail for
9 | trespassing if he stayed at the premises." (Complaint at 11.) The officer defendants
10 | "forced the Plaintiff to gather his personal property from inside the premises and to vacate
11 | the premises immediately." (Complaint at 11-12.)
12 |   Plaintiff alleges that Defendants violated Plaintiff's rights to procedural due process
13 | and equal protection under the Fourteenth Amendment (Complaint at 29-42), violated
14 | Plaintiff's rights to be free from unreasonable searches and seizures under the Fourth
15 | Amendment (Complaint at 13-29), conspired to violate Plaintiff's constitutional rights
16 | (Complaint at 42-46), and violated state law (Complaint at 46-70). Plaintiff seeks
17 | compensatory and punitive damages. (Complaint at 72.)
18 | ///
19 | ///
20 | ///
21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 |
28 |

B. **The Complaint Fails To State A Fourteenth Amendment Due Process Claim.**

1. **Wrongful Eviction.**

Plaintiff claims that his procedural due process rights were violated when he was the victim of an extrajudicial eviction from the premises by defendants.[1] (See Complaint at 4-12, 29-40.)

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend XIV. Procedural due process claims are examined under a two-part analysis. First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process. See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989). "Property interests are not created by the Constitution[.]" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" Id. (internal quotation marks, ellipsis, and citation omitted).

Here, although Plaintiff claims to have been a subtenant who paid Moquete $600 (jointly with Dewey) to live at the premises and was issued keys to the premises on April 1, 2012, Plaintiff cannot show the existence of a conventional relationship of landlord and

---

[1] In Plaintiff's July 3, 2014, Response to Magistrate Judge's Show Cause Order, he states that "Plaintiff has brought his § 1983 Due Process claim for his wrongful eviction against only defendant officers[] Kamaron Sardar . . . and Mark Campell[.]" (Response to OSC at 4 (stating further that the allegations concerning the actions of Defendant Moquete "are only meant to explain what occurred when defendants[] Sardar and Campell violated the Plaintiff's Due Process").) However, it is unclear based on the allegations in the Complaint whether Plaintiff brings his procedural due process claim for wrongful eviction against Defendants Sardar and Campell only or against all Defendants. (Compare Complaint at 29 (summarizing his claim as one for the "deprivation of the Plaintiff's civil and constitutional rights pursuant to[] 42 U.S.C. § 1983 for defendants Sardar['s] and Campell['s] actions in expediting the eviction on the Plaintiff") with id. at 30 (stating that "[Plaintiff] was denied procedural due process under the Fourteenth Amendment to the U.S. Constitution when Defendant Moquete, with defendants[] Sardar['s] and Campell['s] aid, used self-help to evict him without providing proper notice and a prior judicial hearing before . . . expedit[ing] the eviction on the Plaintiff from the property") and id. at 34 (stating that "defendant Moquete invoked the authority of specific state officials . . . to put the weight of the state behind his private decision to evict").)

tenant when there were "many other subtenants" that "Moquete allowed to live at the [premises,]" and the premises generally remained under the supervision and control of Moquete. (Complaint at 5, 8, 9 (indicating that "Moquete had agreed with [several other people who lived at the premises] that in exchange for work they would perform for defendant Moquete[,] he would provide them free room and board[,]" and that Moquete's youngest son "visited the premises" and even "live[d] the[re] intermittently while under the care of defendant Moquete"); see id. at 2 (stating that "Moquete . . . was also a tenant at the premises").) "The absence of specified premises assigned for the exclusive occupancy of a particular person or persons with the capacity and right to exclude others from entering would seem to preclude the existence of anything resembling a conventional landlord-tenant relation." Martinez v. Sonoma-Cutrer Vineyards, 577 F. Supp. 451, 454 (C.D. Cal. 1983) (rejecting plaintiffs' § 1983 claim that they were deprived of a property interest without due process of law when they were evicted from their premises without the benefit of an unlawful detainer proceeding because plaintiffs failed to establish the existence of a protected property interest in the case of "workers occupying bunks in a barracks remaining under the supervision and control of the employer through its foreman"). Taking Plaintiff's allegations in the Complaint as true, therefore, the Court finds that Plaintiff has not established the existence of a protected property interest.

In sum, Plaintiff fails to state a cognizable procedural due process claim in relation to his allegations that he was wrongfully evicted from the premises without prior notice and a hearing. See Thomas v. Cohen, 453 F.3d 657, 658-60, 663 (6th Cir. 2006) (no due process violation when officers evicted plaintiffs from a transitional homeless shelter despite their protests that they were tenants who paid rent because plaintiffs did not qualify as tenants under state law and lacked a protected property interest under the Fourteenth Amendment).

### 2. **Deprivation Of Property.**

Plaintiff alleges that Defendants violated Plaintiff's Fourteenth Amendment right to procedural due process when they unlawfully seized Plaintiff's personal property without providing notice or a hearing before the deprivation occurred. (Complaint at 40-42.)

Specifically, Plaintiff alleges that Sardar confiscated Plaintiff's keys to the premises on May 4, 2012, and refused to return the keys to Plaintiff when he requested them back. (Complaint at 5, 40.) Moreover, Plaintiff further alleges that Sardar and Campell did not satisfy the requirements of California Civil Code § 2080, et seq., because they failed to provide him a receipt and/or instructions for retrieving his personal property. (Complaint at 41.) According to Plaintiff, "[n]o adequate post deprivation remedy was available for the Plaintiff to retrieve his personal property." (Complaint at 42.)

At the core of the due process clause is the right to notice and a hearing "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978) (internal citation omitted). However, Plaintiff's allegations are insufficient to state a procedural due process claim based on the confiscation of the keys to the premises, because he does not allege Defendants deprived him of any property interest, let alone a significant one. As discussed above, Plaintiff alleges that Moquete issued Plaintiff the keys to the premises "to permit the Plaintiff . . . access to and from the property." (Complaint at 5.) Yet, Moquete subsequently called the officer defendants and requested their help in removing Plaintiff from the premises because "[Moquete] did not want the Plaintiff living on his property." (Complaint at 5.) In light of the fact that Plaintiff has not alleged the existence of a protected property interest in remaining at the premises, see supra at § B.1., Plaintiff's allegations are also insufficient to establish the existence of a protected property interest in the keys that were provided "to permit [him] . . . access to and from the property." (Complaint at 5.) In sum, Plaintiff's procedural due process claim based on Defendants' confiscation of the keys to the premises does not withstand screening. See Memphis Light, 436 U.S. at 19.

\* \* \* \*

Based on the foregoing, the Court concludes that the Complaint fails to allege a cognizable claim for violation of Plaintiff's Fourteenth Amendment due process rights. Plaintiff's Fourteenth Amendment due process claims are subject to dismissal.

**C.     Plaintiff's Fourth Amendment Claim.**

The Fourth Amendment accords the right to protection from arrest without probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Watson, 423 U.S. 411, 417 (1976). Thus, "[a] claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City and County of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). Although probable cause is "incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), it is widely understood that "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck, 379 U.S. at 91)); accord Edgerly v. City and County of San Francisco, 599 F.3d 946, 953 (9th Cir. 2010). To determine whether an arrest is supported by probable cause, the court must consider "the totality of the circumstances known to the arresting officers" at the time of the arrest. John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008). "'Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.'" McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). Furthermore, "[p]olice may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause," and "[p]robable cause may be founded upon . . . information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." Hart v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006) (internal quotations and citation omitted). Once an officer has made a lawful arrest, the officer may conduct a search of the arrestee's person and area of control. United States v. Robinson, 414 U.S. 218, 224 (1973).

Cal. Penal Code § 602(o) defines trespass in relevant part as

> Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession.

Cal. Penal Code § 602(o).

Plaintiff alleges that the officer defendants violated Plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures when they (1) handcuffed Plaintiff, (2) performed a pat-down/full-body search of Plaintiff, (3) searched Plaintiff's computer bag, (4) seized Plaintiff's wallet, (5) interrogated Plaintiff, and (6) detained Plaintiff in the backseat of a patrol vehicle for up to one hour and a half. (Complaint at 13-29.) Plaintiff argues that the officer defendants "placed him under arrest without a warrant, probable cause, and/or reasonable suspicion." (Complaint at 26.) According to Plaintiff, the officer defendants "did not have reasonable suspicion/probable cause to detain the Plaintiff because there was no criminal activity occurring at the premises[.]" (Complaint at 28.)

As discussed above, Plaintiff states that on or about May 4, 2012, at 10:30 a.m., Plaintiff was confronted by Defendant Sardar at the premises. Sardar allegedly informed Plaintiff that he was responding to a call for service made by Moquete, who complained "he did not want the Plaintiff living on his property." (Complaint at 5.) Plaintiff allegedly told Sardar that he had been living at the property for over a month "with many other subtenants." (Complaint at 5.) "Plaintiff informed defendant Sardar that . . . Moquete had rented to the Plaintiff to live at the premises and [that Plaintiff] had been arguing with defendant Moquete over rent money that defendant Moquete was demanding, but because

[Plaintiff] refused to pay[, Moquete] . . . called the police." (Complaint at 5.) Plaintiff states that "Sardar continued to quibble with the Plaintiff concerning his right to remain living at the property because the Plaintiff did not have a lease/receipt[.]" (Complaint at 6 (stating further that "Sardar claimed the mail [Plaintiff had been receiving at the premises] was insufficient to [show] the Plaintiff lived at the [premises]").) Plaintiff requested to speak to Sardar's supervisor. (Complaint at 6.) While Plaintiff and Sardar were inside the premises waiting for Sardar's supervisor (Defendant Campell) to arrive, Plaintiff showed Sardar his personal property, which included clothes, shoes, personal effects, blanket, linens, bed, pillows, suitcase, laptop computer, computer bag, food, receipts, and mail. (Complaint at 6.) Sardar inquired whether Plaintiff would consent to a search of his computer bag. Plaintiff did not consent to the search. (Complaint at 5-6.) According to Plaintiff, because Plaintiff refused to consent to the search of his computer bag, Sardar handcuffed Plaintiff and detained him in the backseat of his patrol vehicle. (Complaint at 7.) Moreover, Sardar performed a pat-down/full-body search of Plaintiff, seized Plaintiff's wallet, and searched Plaintiff's computer bag. (Complaint at 7.) Sardar continued to question Plaintiff when he was detained in the back of the patrol vehicle, checking Plaintiff for warrants and threatening Plaintiff that if he did not disclose his date of birth, social security number, and previous addresses, Sardar would take Plaintiff straight to jail. (Complaint at 7-8.) Sardar further questioned Plaintiff concerning his criminal history. (Complaint at 8.)

The Ninth Circuit found that Plaintiff has alleged a cognizable Fourth Amendment claim, citing King v. Massarweh, 782 F.2d 825, 827-28 (9th Cir. 1986). Accordingly, Plaintiff's Fourth Amendment claim is sufficient to withstand screening.

**D.      The Complaint Fails To State A Fourteenth Amendment Equal Protection Claim.**

Plaintiff asserts a Fourteenth Amendment claim under the Equal Protection Clause. (Complaint at 37-40.) Specifically, Plaintiff alleges that the officer defendants "intentionally treated the Plaintiff differently than the other subtenants living at the premises at the time of the incident . . . without any rational basis." (Complaint at 38.) Plaintiff states that he was a "lawful subtenant that had been living at the premises for over a month and had produced

sufficient proof to defendants[] Sardar and Campell that he had been lawfully living [there,]" and that the officer defendants' "actions were irrational[.]" (Complaint at 39-40 (alleging further that the officer defendants' "detainment/arrest o[f] the Plaintiff was based on the Plaintiff's refusal to consent to the search of his computer bag and not based on any criminal activity occurring at all[,]" and that they "cho[]se to evict the Plaintiff from the premises [at the instruction of Moquete]" despite conceding that they believed the Plaintiff was "lawful[ly] living at the premises").)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (internal quotation marks and citation omitted). Although an equal protection claim typically involves discrimination based on membership in a class, an individual singled out for differential treatment in an irrational and arbitrary manner may sometimes bring a "class of one" equal protection claim. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(per curiam); see also Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 601-02 (2008). The plaintiff must show that the defendant intentionally treated plaintiff differently from others similarly situated, and that there is no rational basis for the difference in treatment. Olech, 528 U.S. at 564. The degree of similarity between plaintiff and the persons with whom he compares himself must be extremely high. See Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (internal quotation marks and citation omitted); Purze v. Village of Winthtrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002) (plaintiffs "must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects").

Here, Plaintiff does not allege that he was treated differently than others similarly situated to him. Plaintiff's conclusory allegation that he was similarly situated to all the other subtenants living at the premises at the time of the incident is unsupported by the factual

14

allegations in the Complaint. Without specific allegations showing that the officer defendants treated Plaintiff differently from persons whose circumstances were similar to Plaintiff's in all relevant respects, there is no factual basis for his equal protection claim. See McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004) (homeowner failed to establish class-of-one equal protection claim when he failed to identify anyone similarly situated to him who was intentionally treated differently in connection with investigation of fire); Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) ("Plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons *situated similarly in all relevant aspects* were treated differently.") (internal quotation marks and citation omitted); Vinatieri v. Mosley, 787 F. Supp. 2d 1022, 1031 (N.D. Cal. 2011) (plaintiff challenging police failure to arrest neighbor who assaulted him failed to state an equal protection claim when he failed to explain "to *whom* he was similarly situated"), aff'd, 2013 WL 3389360 (9th Cir., Jul. 9, 2013).

Accordingly, Plaintiff's equal protection claim is subject to dismissal.[2]

---

[2] In addition to Plaintiff's failure to allege differential treatment, the Court notes that an individual may not pursue a class-of-one equal protection claim based on official acts that are inherently discretionary. See Engquist, 553 U.S. at 602-03 (when state action involves "discretionary decisionmaking based on a vast array of subjective, individualized assessments," there is no equal protection violation "when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted"); Towery v. Brewer, 672 F.3d 650, 660-61 (9th Cir. 2012) ("In other words, the existence of discretion, standing alone, cannot be an Equal Protection violation. At the very least, there must be some respect in which the discretion is being exercised so that the complaining individual is being treated less favorably than others generally are."); compare Flowers v. City of Minneapolis, 558 F.3d 794, 799 (8th Cir. 2009) (police officer's decisions regarding whom to investigate are subject to traditional class-based equal protection analysis but may not be attacked in a class-of-one equal protection claim); Donahue v. Arpaio, 869 F. Supp. 2d 1020, 1074 (D. Ariz. 2012) (discretionary decisions by sheriff and prosecutor during investigation and prosecution of criminal charges could not be basis for a class-of-one equal protection claim) with Elliott-Park v. Manglona, 592 F.3d 1003, 1006-07 (9th Cir. 2010) (allegations that Micronesian police officers failed to investigate and arrest a Micronesian drunk driver involved in accident with Korean victim due to race-based reasons stated an equal protection claim); but see Hanes v. Zurick, 578 F.3d 491 (7th Cir. 2009) (allowing class-of-one claim when plaintiff alleged that officer was motivated by personal animus when he repeatedly arrested only plaintiff during plaintiff's disputes with neighbors).

### E. The Court Would Recommend Declining the Exercise of Supplemental Jurisdiction Over Plaintiff's State Law Claims.

Plaintiff asserts state law claims against Moquete for constructive conviction, forcible entry and forcible detainer (Cal. Civ. Code § 789.3(b)), unfair business practices (Cal. Bus. & Prof. Code § 17200, et seq.), and breach of quiet enjoyment.

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380-81 (1994). The party who invokes federal jurisdiction bears the burden of establishing that it is proper. Id. at 377. The existence of federal jurisdiction must be determined on the face of the plaintiff's complaint. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

28 U.S.C. § 1367 governs the exercise of supplemental jurisdiction over state law claims in a suit involving federal claims. In general, when district courts have original jurisdiction over one or more claims in civil actions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Ninth Circuit has explained that non-federal claims are "part of the same 'case' as federal claims when they derive from a common nucleus of operative facts and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." Kuba v. 1–A Agric. Ass'n, 387 F.3d 850, 855 (9th Cir. 2004) (internal quotation marks omitted).

A court may decline to exercise supplemental jurisdiction over a claim that meets the "same case or controversy" test if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Unless a court "properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims,

supplemental jurisdiction must be asserted." Executive Software v. U.S. Dist. Court, 24 F.3d 1545, 1556 (9th Cir. 1994).

Here, Plaintiff asserts federal civil rights claims against Officer Sardar and Sergeant Campell arising from the allegedly unlawful detention and search of Plaintiff and his property. Plaintiff's state law claims against Moquete pertain to Moquete's allegedly unlawful eviction of Plaintiff from the premises. It is debatable whether the state law claims even satisfy § 1367(a)'s "common nucleus of operative facts" test. Plaintiff's potentially viable federal claims turn on whether Sardar and Campell had reasonable suspicion or probable cause, based on the facts known to them at the time, to search and detain Plaintiff and his property. Plaintiff's state law claims against Moquete would require a determination of the actual facts and law regarding Plaintiff's tenancy and Moquete's actions in effectuating Plaintiff's eviction. It does not appear that these state and federal claims would ordinarily be tried in the same proceeding because they involve distinct factual and legal determinations, although there would be some overlap in the facts regarding Moquete's call to the police to have Plaintiff removed from the premises. Moreover, even if the state and federal claims arise from the same case or controversy, it appears that the state law questions would predominate over any questions common to the federal and state law claims. Accordingly, the Court would recommend declining the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1337(a) & (c)(2).

## IV.

## ORDER

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3) be filled out

1 | exactly in accordance with the directions on the form; and (4) be complete in and of itself
2 | without reference to the previous complaints or any other pleading, attachment or
3 | document.  The Clerk is directed to provide Plaintiff with a blank Central District of California
4 | civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: January 11, 2016

/s/ John E. McDermott
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE